SO ORDERED.

SIGNED this 11th day of July, 2014.



Dale L. Somers
United States Bankruptcy Judge
_____

Opinion Designated for Print and On-Line Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:

ROSEMARY ANN KROUSE,            CASE NO. 13-20356
                                     CHAPTER 7
             DEBTOR.

ERIC C. RAJALA, Chapter 7 Trustee,

             PLAINTIFF,

v.                                        ADV. NO. 13-6094

NATIONAL ASSOCIATION OF
POSTAL SUPERVISORS BRANCH 458,

             DEFENDANT.

MEMORANDUM OPINION AND ORDER
GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this adversary proceeding, Plaintiff Eric C. Rajala, Chapter 7 Trustee (Trustee),

seeks to avoid under 11 U.S.C. § 548(a)(1)(B) and recover under § 550(a) a transfer of

$15,000 made by Debtor to Defendant National Association of Postal Supervisors Branch 458 (NAPS) immediately before the filing of Debtor's bankruptcy petition.  Both the Trustee and NAPS have moved for summary judgment.  The relevant facts are uncontroverted.  The motions present the legal question whether the Trustee may avoid as a fraudulent transfer a prepetition payment of funds which Debtor could have claimed as exempt if the transfer had not been made.  For the reasons examined below, the Court concludes that the Trustee may avoid such a transfer.  The Court has jurisdiction.[1]

**UNCONTROVERTED FACTS.**

Debtor signed her voluntary petition under Chapter 7 on February 15, 2013, and her counsel filed it on February 20, 2013, at 3:03 pm.  One of the assets listed on Debtor's Schedule B is "life insurance proceeds US Bank" valued at $147,000.

On February 8, 2013, Debtor received a check from the Office of Federal Employee's Group Life Insurance for $147,670.77, representing the proceeds of Debtor's claim for life insurance arising from the death of her husband on December 31, 2012.  On February 8, 2013, Debtor deposited the check into her US Bank savings account.  On the morning of February 20, 2013, before the petition was filed, Debtor purchased two

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.  D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014).  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).  There is no objection to venue or jurisdiction over the parties.

2

cashier's checks from US Bank for a total of $67,350. One cashier's check, in the amount of $51,750, was made payable to Wanda O'Brien for payment of Debtor's husband's debt to Ms. O'Brien. Debtor delivered the check to Ms. O'Brien, who deposited it into her US Bank checking account on February 20, 2013, at 11:45 a.m., several hours before Debtor's petition was filed. The second cashier's check, in the amount of $15,600, was made payable to NAPS for payment of Debtor's husband's debt to NAPS. Debtor delivered the check to NAPS, which deposited it into its Brotherhood Bank checking account on February 20, 2013, at 2:30 p.m., approximately one-half hour before Debtor's petition was filed. Neither the transfer to Wanda O'Brien nor the transfer to NAPS was disclosed by Debtor in her schedules or statement of financial affairs filed on February 20, 2013. As a result of the purchases of the cashiers' checks, when Debtor's petition was filed at 3:03 p.m. on February 20, 2013, she had in her US Bank account net life insurance proceeds of $80,320.77.

On her Schedule C, Debtor claimed $147,000 to be exempt under K.S.A. 60-2313(a)(7). The Trustee objected to the exemption of the portion of the life insurance proceeds which had been transferred prepetition. The Court sustained the objection and ruled that the exemption is limited to $80,320.77, the amount of the life insurance proceeds in Debtor's possession when the Chapter 7 petition was filed.

Debtor's schedules showed $153,301 owed to creditors, real property valued at

3

$60,690 (subject to a secured claim of $52,514),[2] and personal property valued at $152,556, comprised primarily of the $147,000 life insurance proceeds,[3] only $80,320.77 of which was in her possession. After investigation, the Trustee determined that as of the filing date, Debtor's nonexempt property consisted of nonexempt funds in her bank accounts of $1,219.26 and a 1994 Ford Van 150 Econoline having a fair value of $750.[4] In its reply brief filed out of time,[5] NAPS states that the amount owed to Debtor's creditors and the value of Debtor's nonexempt assets are controverted, but provides nothing of evidentiary value in support. The Court will therefore regard as uncontroverted that on the date Debtor filed her petition, she owed her creditors $153,301 and had non-exempt property valued at $1,969.26.

**DISCUSSION.**

The Trustee seeks to avoid the payment to NAPS under § 548(a)(1)(B). It provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily —
> . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . . ; and

---

[2] Case no. 13-20356, Doc. 1 at 7, Schedule A.

[3] *Id*. at 8-12, Schedule B.

[4] Doc. 37 at 5.

[5] Doc. 38 (filed on May 29, 2014, more than 21 days after the Trustee filed a memorandum in support of his motion for summary judgment on April 25, 2014).

> (ii) (I) was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer.

This subsection allows a bankruptcy trustee to set aside constructively fraudulent transfers — transfers which are not "infected by actual fraud"[6] but are made by insolvent debtors.

> It permits avoidance if the trustee can establish (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within [two years] of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received 'less than a reasonably equivalent value in exchange for such transfer.'[7]

The uncontroverted facts establish these elements. On February 20, 2013, Debtor delivered a cashier's check in the amount of $15,600 to NAPS to pay the debt of her late husband to NAPS. The funds used to purchase the cashier's check were proceeds of life insurance paid to Debtor which had been deposited in a segregated account. NAPS deposited the check into its checking account on February 20, 2013, at 2:30 pm, approximately one-half hour before Debtor's petition was filed. The facts therefore establish that Debtor made a transfer of an interest in her property to NAPS, that the transfer occurred less than two years prepetition, and that Debtor received less than a reasonably equivalent value in exchange, since the debt was owed by Debtor's late husband, not by Debtor. Further, the facts establish that Debtor was insolvent on the date

---

[6] *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994).

[7] *Id.*

of the transfer because Debtor's debts then exceeded the value of all her nonexempt property.

Even though all the elements of a constructively fraudulent transfer are present, NAPS contends that the Trustee may not avoid the transfer because the funds transferred were exempt proceeds of life insurance. NAPS argues, "Because the life insurance proceeds received by the Debtor were exemptible property and not subject to the attacks of creditors, the payment to NAPS could not be fraudulent as a matter of law under § 548(a)."[8] NAPS relies on cases holding that a trustee cannot avoid such a transfer under § 548(a)(1)(A) because a transfer of exempt property cannot be made with the actual intent to hinder, delay, or defraud creditors,[9] and cases reasoning that to permit avoidance "would allow the Debtor's creditors to indirectly, through the trustee, defeat the Debtor's state law exemption . . . when they could not do this acting on their own."[10]

The Trustee's response is two fold.[11] First, he contends that NAPS is in effect

---

[8] Doc. 35 at 5.

[9] *Kepler v. Weis (In re Weis)*, 92 B.R. 816, 822-23 (Bankr. W.D. Wis. 1988) (transfer of exempt property could not be avoided under § 548(a)(1) as a matter of law because transfer could not have been made with actual intent to hinder, delay, or defraud creditors); *Malone v. Short (In re Short)*, 188 B.R. 857 (Bankr. M.D. Fla. 1995) (transfer of homestead that was exempt at the time of transfer cannot be avoided under § 548(a)(1) as having been made with the intent to hinder, delay, or defraud creditors). After these cases were decided, § 548(a) was amended and § 548(a)(1) was redesignated as § 548(a)(1)(A). *See* Religious Liberty and Charitable Donation Protection Act of 1998, Pub. L. No. 105-183, § 3(a), 112 Stat. 517 (1998), *reprinted in* App. F, Pt. 41(o), *Collier on Bankruptcy*, App. Pt. 41(o)(ii) at App. Pt. 41-255 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2012).

[10] Doc. 35 at 6 (*citing Jarboe v. Treiber (In re Treiber)*, 92 B.R. 930, 933-34 (Bankr. N.D. Okl. 1988), *Silagy v. Marzilli (In re Hunter)*, 2008 WL 2076750, *2 (Bankr. N.D. Ohio May 15, 2008); and *Rutledge v. Johansen*, 270 F.2d 881, 882-83 (10th Cir. 1959)).

[11] *See* doc. 37.

6

asserting Debtor's exemption rights, that such rights are personal to Debtor, and NAPS is therefore precluded from asserting that the exempt nature of the transferred funds bars the Trustee's complaint. For this position, the Trustee relies upon an unpublished decision of the Tenth Circuit BAP.[12] Second, the Trustee argues that the Court should reject those decisions holding that Debtor's prepetition transfer of exemptible property cannot be avoided. The Trustee relies on case law[13] and §§ 522(g)(1), 541(a)(1), and 522(b)(1) and (b)(3).

NAPS has failed to address the Trustee's first argument,[14] but both parties have fully briefed the question whether prepetition transfers of exemptible property are amenable to avoidance and recovery actions by bankruptcy trustees. The Court will resolve this case on its merits by ruling on this issue, rather than on the issue of NAPS's standing to assert Debtor's exemption rights.

One of the cases cited by NAPS in support of its position that transfers of exemptible property cannot be the object of avoidance actions is *Rutledge*,[15] a 1959 decision of the Tenth Circuit Court of Appeals, which would be very persuasive in this

---

[12] *Morris v. First Nat'l Bank and Trust (In re Taylor)*, 1998 WL 123027 (10th Cir. BAP March 19, 1998).

[13] *Id.*; *Tavenner v. Smoot*, 257 F.3d 401 (4th Cir. 2001).

[14] NAPS filed its own motion for summary judgment and brief in support (doc. 35) but failed to timely reply to the Trustee's response to NAPS's motion and cross-motion for summary judgment (doc. 37). NAPS's out-of-time reply (doc. 38) does not address *Taylor*, the case relied upon by the Trustee for the proposition that NAPS is precluded from asserting the exempt nature of the funds.

[15] 270 F.2d 881.

7

case if it were still good law. In *Rutledge*, the bankruptcy trustee brought an action to recover exempt homestead property that the debtor had transferred to a creditor for an antecedent debt within four months preceding bankruptcy. The trial court found that all elements of a voidable preference were present but held the transfer could not be avoided because the property transferred was exempt under Oklahoma law. On appeal by the trustee, the Tenth Circuit affirmed, applying the "textbook law . . . that 'a transfer of exempt property of a debtor, though it is to a creditor and to apply to an antecedent indebtedness, does not give rise to a voidable preference.'"[16] The Circuit noted that the rule was "grounded in the legal concept that property exempt by law remains in the bankrupt, does not pass to the trustee, and the bankrupt's disposition of it prior to bankruptcy is therefore of no concern to the trustee or the creditors he represents."[17] To allow the avoidance of the preferential payment "would deny to the bankrupt the right to accomplish before bankruptcy that which he could clearly do after bankruptcy. Surely, if a bankrupt is entitled to have exempt property of which he is seized at the time of filing of the bankruptcy set apart from the bankruptcy estate, he is entitled to make a valid transfer of it prior to the date of the filing."[18] The *Rutledge* view has been referred to as the "no harm, no foul" doctrine.[19] Courts have applied the doctrine not only in preference actions

---

[16] *Id.* at 882 (*quoting Remington on Bankruptcy*, Vol. 4, § 1678).

[17] *Id.*

[18] *Id.*

[19] *E.g., Tavenner v. Smoot*, 257 F.3d at 406.

8

but also in actions to recover fraudulent conveyances of exempt property.[20]

This Court finds *Rutledge* not to be applicable. Since 1959, when *Rutledge* was decided, the Bankruptcy Act that was then in effect has been repealed, and replaced with the current Bankruptcy Code, enacted in 1978. An analysis of the Code shows the invalidity of the "no harm, no foul" doctrine under current law. Contrary to the rationale of *Rutledge*, § 541 now defines property of the estate to include all property of the debtor, including property which the debtor may exempt. The estate also includes any interest in property which the trustee recovers under § 550, which provides that to the extent a transfer is avoided under §§ 544, 545, 547, 548, 553(b) or 724(a), the trustee may recover such property or its value for the benefit of the estate. Section 522(g) allows the debtor to exempt property so recovered by the trustee to the extent such property could have been exempted if it had not been transferred, providing that the transfer was not a voluntary transfer by the debtor and the debtor did not conceal such property. If transfers of potentially exempt property could not be recovered by the trustee, no purpose would be served by § 522(g). Under the Code, the avoidance of a debtor's voluntary transfer of property which the debtor could have exempted now augments the estate for the benefit of all creditors. A voluntary transfer is in effect a waiver of the right to exempt the property. In addition, under the Code, potentially exempt property may become available

---

[20] *Malone v. Short (In re Short)*, 188 B.R. 857, 859-60 (Bankr. M.D. Fla. 1995) (transfer of homestead that was exempt at the time of transfer cannot be avoided as having been made with the intent to hinder, delay, or defraud creditors); *Kapila v. Fornabaio (In re Fornabaio)*, 187 B.R. 780, 782 (Bankr. S.D. Fla. 1995) (although debtor transferred exempt property for less than reasonably equivalent value when insolvent, the transfer could not be avoided by trustee).

9

to creditors if the debtor fails to assert the exemption. The label "no harm, no foul" is now a misnomer; to disallow avoidance may result in the diminution of the estate and be contrary to the goal of making an equitable distribution to creditors.

The legislative history of the Code fully supports the rejection of the "no harm, no foul" doctrine. In 1970, Congress created the Commission on the Bankruptcy Laws of the United States to "study, analyze, evaluate, and recommend changes to the [1898 Bankruptcy] Act."[21] The Commission's recommendations provided the basic structure of the new Code that was enacted in 1978. Whereas under the Act, exempt property was not included in the estate,[22] the Commission recommended that the Code should provide for the estate to include all property of the debtor on the date of filing, including property which the debtor claims is exempt, and also include property which the trustee recovers under § 550.[23] One of the Commission's recommendations was to overrule the cases holding that "a transfer of exempt property cannot be a preference."[24] The report stated:

> There is no valid reason supporting the case law that is being overruled; the mere fact that the property used to prefer a creditor may be claimed as exempt does not establish a reason why preference attack is not appropriate. The goals of equality and avoidance of unwise extensions of credit would be furthered by allowing preference attack. The only rationale

---

[21] Joint Resolution, Pub. L. 91-354, 84 Stat. 468-469 (July 24, 1970).

[22] *See Rutledge*, 270 F.2d at 882.

[23] 11 U.S.C. § 541(a)(1) and (3).

[24] Report of the Commission on the Bankruptcy Laws of the United States, July 1973, 93d Cong., 1st Sess., H.R. Doc. 93-137, pt. I, at Ch. 8(E)(3)(c), *reprinted in* App. B, Pt. 4(c) *Collier on Bankruptcy*, at App. Pt. 4-465.

10

for the cases is that other creditors are not hurt since they are not entitled to expect payment or security from exempt property.[25]

Although cases decided since the adoption of the Code have not uniformly rejected the "no harm, no foul" doctrine, the majority of cases has done so.[26] In *Tavenner* [27] the Fourth Circuit Court of Appeals noted the split of authority but found the "majority position — that transfers of exemptible property *are* amenable to avoidance and recovery actions by bankruptcy trustees — is better reasoned."[28] It did so for two reasons. First, § 522(g) anticipates this result, since it permits the debtor under certain circumstances to exempt property recovered by the trustee. Second, the "no harm, no foul" approach is misguided. "Under a statutory scheme in which all property is presumed to be part of the bankruptcy estate, and no property is exempt until such time as the debtor claims an exemption for it, creditors *can* be harmed by transfers of potentially exempt property because it is not a foregone conclusion that such property will be exempt from the estate."[29] The Tenth Circuit BAP, in an unpublished decision, held that the fact that the

---

[25] *Id.*

[26] *Maxwell v. Barounis (In re Swiontek)*, 376 B.R. 851, 865 n. 8 (Bankr. N.D. Ill. 2007) (collecting cases). One of the cases cited as adopting the majority view is *Redmond v. Tuttle*, 698 F.2d 414 (10th Cir. 1983), in which, without mentioning the "no harm, no foul" doctrine, the Tenth Circuit ruled the debtors' attempted exemption of property the trustee recovered that they had transferred prepetition must be denied under § 522(g) because the transfer had been voluntary.

[27] 257 F.3d 401.

[28] *Id.* at 406.

[29] *Id.* at 407.

11

debtors claimed a vehicle as exempt "did not affect the Trustee's right to avoid the Bank's [unperfected] lien under section 544(a)."[30] It relied upon §§ 541 and 522b) but did not cite *Rutledge* or any cases either accepting or rejecting the "no harm, no foul" doctrine.

This Court is persuaded that the majority is correct, and prepetition transfers of property which the debtor could have claimed as exempt are avoidable by the trustee if the elements of constructively fraudulent transfers under § 548(a)(1)(B) are satisfied. The construction of §§ 541 and 522(g), together with the accompanying legislative history, compel this result.

For the foregoing reasons, the Court declines to apply the "no harm, no foul" doctrine to this action under § 548(a)(1)(B) and holds that the Trustee's avoidance of Debtor's constructively fraudulent transfer to NAPS of $15,000 before she filed her bankruptcy petition is not precluded because the funds transferred could have been claimed as exempt if the transfer had not been made. The Trustee's motion for summary judgment is therefore granted, and NAPS's motion for summary judgment is denied. The Trustee may avoid the transfer to NAPS under § 548(a)(1)(B) and recover the same from NAPS for the benefit of the estate under § 550(a).

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the

---

[30] *In re Taylor*, 1998 WL 123027 at *2.

Federal Rules of Civil Procedure applicable to this proceeding. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058, which makes Federal Rule of Civil Procedure 58 applicable to this proceeding.

    **IT IS SO ORDERED.**

# # #